Foulk et al. v. Aetna Life Insurance Company.

*Henry L. Keck* and *J. A. Stranahan, Jr.*, for plaintiffs.
*Brockway & Whitla*, for defendant.

MCLAUGHRY, P. J., September 26, 1930.—The plaintiffs in this case conduct a drug store in the Borough of Greenville. The defendant is the Ætna Life Insurance Company. On May 8, 1926, the defendant issued a druggist's liability policy to the plaintiffs based upon representation to the effect that the business was owned by J. F. Foulk and W. R. Davis, doing business as Foulk's Cut Rate Drug Store. The plaintiffs paid the annual premium provided for in said policy, and kept said policy in force by paying the annual premium, and it was in force May 11, 1927.

On May 11, 1927, Howard C. Lyon went to the plaintiffs' drug store and asked a clerk, Mary E. Callahan, for an ounce of tartaric acid. Miss Callahan sold Mr. Lyon a package labeled "tartaric acid." Mr. Lyon took this package to his home in Greenville, Pennsylvania, and his wife, Grace M. Lyon, used the contents in the preparation of a drink on the evening of May 11, 1927, and she and her husband and George W. Dorwart, a member of the family, partook of the drink. Shortly after drinking this preparation they became ill, being caused by the drink containing the contents of the package. Tartaric acid and tartaremetic are both drugs customarily kept for sale in drug stores. Tartaric acid is used generally in the preparation of a harmless drink. It was discovered that Mary Callahan delivered to Mr. Lyon tartaremetic instead of tartaric acid. Howard C. Lyon, Grace M. Lyon and George W. Dorwart entered suit against the plaintiffs at Nos. 90, 91, 92, November Term, 1927, in the Court of Common Pleas of Mercer County, for damages resulting from an error or mistake of plaintiffs' clerk, and Howard C. Lyon obtained a judgment for $600, Grace M. Lyon a judgment for $2375, and George W. Dorwart a judgment for $750, which judgments, with costs and interest to date of payments, amounted to $3867.13. The Ætna Life Insurance Company refused to defend these suits, disclaiming liability on account of the mistake of plaintiffs' clerk. The plaintiffs in their statement of claim allege that the expense of witnesses and attorneys' fees amount to $1265.60, making a total of $5132.73.

The plaintiffs allege that they were properly insured by the defendant on May 11, 1927, and had paid said defendant company the cost of said insur-

ance, and they are entitled to recover under the provisions of the policy the amount expended by them.

The defendant alleges in its affidavit of defense that Mary E. Callahan sold to Howard C. Lyon tartaremetic, and that tartaremetic is a violent poison, and no record of the sale was made as required by the laws of the Commonwealth, and the said Mary E. Callahan is a person unauthorized by the laws of the Commonwealth of Pennsylvania to dispense or sell poison, and that the sale was in violation of the laws of the State of Pennsylvania. Defendant further alleges that Mary E. Callahan delivered said poisonous article to the purchaser without satisfying herself that the purchaser understood the poisonous nature of the article, and the plaintiffs, by reason of the sale of said poison, failed to enter in their record book kept for that purpose the name of the article, the quantity sold or disposed of, the date on which the same was sold, and the purpose for which it was said to be intended. All of which, it is alleged, is contrary to the laws of the Commonwealth.

The defendant further alleges that the said Mary E. Callahan not being a registered pharmacist, the sale was not made under the supervision of a registered pharmacist or registered assistant pharmacist. The defendant bases its defense on that part of the policy, being the contract here, where it states that the defendant is not liable under certain circumstances. This exception reads as follows:

". . . save and except claims arising by reason of:

"(1) Injuries and/or death which shall be shown to have been caused by any person employed in violation of law, or caused by a failure to comply with any statute or local ordinance or in consequence of the performance of any unlawful act by the assured or any employee of the assured."

It is clear from a reading of the contract that if the injuries were caused by any person employed by the plaintiffs in violation of law, or by failure to comply with any statute, or because of the performance of any unlawful act by the insured, or any employee, the plaintiff cannot recover. The evidence shows that Mary E. Callahan was in the employ of the plaintiffs on May 11, 1927, and had been for a period of at least four years.

Paragraph seven of the plaintiffs' statement of claim reads as follows:

"That on May 11, 1927, Howard C. Lyon, husband of Grace M. Lyon, of Greenville, Mercer County, Pennsylvania, went to the plaintiffs' said drug store for the purpose of purchasing an ounce of tartaric acid, a non-poisonous substance, and asked Mary E. Callahan in said drug store for an ounce of tartaric acid."

Paragraph eight of plaintiffs' statement of claim reads as follows:

"That said Mary E. Callahan did then and there sell to the said Howard C. Lyon a package labeled tartaric acid and supposed to contain tartaric acid, but which in fact did not contain tartaric acid, but did contain tartaremetic, a violent poison."

J. F. Foulk, one of the plaintiffs, testified as follows:

"Q. Tartaremetic is a poison, is it not? A. Yes, sir. Q. And as you have described it in your statement of claim it is a violent poison, is it not? A. Yes. Q. And is likely to destroy life? A. Yes, sir."

It would appear that the plaintiffs' statement of claim, which is in evidence, describes that which was sold by Mary E. Callahan as a "violent poison," and it is admitted by the plaintiffs that it is likely to destroy life.

It was testified that there were two registered pharmacists in the store at the time the sale was made to Mr. Lyon, and in regard to this Miss Callahan testified as follows:

"Q. And you said nothing about the request of the customer to anyone else in the store? A. Mr. Foulk was in the drug department when I weighed it out. Q. I asked you if you said anything to anybody about the request of the customer? A. No. Q. So you got whatever you got out of the bottle yourself, weighed it out, wrapped it up and said nothing to Mr. Foulk or to Mr. Ralston? A. No."

It was admitted by the plaintiffs that tartaric acid and tartaremetic are both drugs, or merchandise or medicine customarily kept for sale in a drug store, and it is evident that Mary E. Callahan had been in the habit of weighing out drugs, taking them out of the bulk and dispensing them to the customer without supervision, and this was being done by her and was permitted by the plaintiffs when she sold and dispensed the tartaremetic. The Act of May 17, 1917, P. L. 208, section 13, reads as follows:

"That hereafter it shall be unlawful to sell drugs, medicines, or poisons at retail, or to compound physicians' prescriptions, or to conduct a pharmacy, or to practice as a pharmacist or assistant pharmacist, except in compliance with the provisions of this act of Assembly: Provided, however, That nothing in this act of Assembly shall be so construed as to interfere with students of pharmacy, or other employees in a pharmacy, from performing such duties as may be assigned to them by and under the supervision of a pharmacist or assistant pharmacist: And provided further, That the compounding of physicians' prescriptions, or the dispensing and selling of poisons at retail, shall not be permitted except under the strict supervision and in the presence of a pharmacist or assistant pharmacist.

"Nothing in this act of Assembly shall be construed so as to prevent an authorized practitioner of medicine from administering or dispensing such drugs to bona fide patients as he or she shall deem necessary: Provided, however, That such drugs so administered or dispensed shall conform to the standards of strength, quality, and purity as fixed by the laws of this Commonwealth; nor prevent the sale or manufacture of proprietary medicines; nor prevent store-keepers from dealing in and selling commonly used household drugs when the same are offered for sale or sold in packages which have been put up ready for sale to consumers by pharmacists, manufacturing pharmacists, wholesale grocers, or wholesale druggists. Any person violating the provisions of this section shall be guilty of a misdemeanor, and upon conviction shall be sentenced to pay a fine of not less than fifty dollars ($50.00) nor more than five hundred dollars ($500.00), or imprisonment for not more than one year, or either or both, in the discretion of the court."

From a careful reading of the law enacted by the State of Pennsylvania, it is apparent that the law permits clerks who are not registered pharmacists, or assistant pharmacists or registered apprentices, to sell articles in the original packages which otherwise could not be sold except by a registered pharmacist or assistant pharmacist, or in their presence. We are of the opinion that when the act of assembly prescribes that it shall be unlawful to sell drugs, medicines or poisons at retail except in compliance with the provisions of the act of assembly, it means that no one can sell any quantity of a medicine or drug when they must take it out of a bulk quantity, unless they are qualified to know what they are selling or dispensing. The law does not permit the sale of medicine that must be taken out of bulk and dispensed and sold in smaller quantities by persons who are unfamiliar with these medicines and drugs.

We are of the opinion that the injuries for which judgments were secured against the plaintiffs were caused by a failure to comply with the laws of the

state, and it being specially agreed in the contract that no recovery shall be had under such circumstances, the plaintiffs are not entitled to recover.

We have examined with a great deal of interest the interpretation of section thirteen of the act of assembly made by counsel for the plaintiffs, but we are unable to reach the conclusion suggested in the brief of counsel.

It does not seem to be contended that the defendant did not have the legal right to insert in its policy such reasonable exceptions as are here expressed. The decisions in Pennsylvania on this question might be cited, but the law, we think, is concisely stated in 36 C. J. 1087:

"A liability insurance company may insert as many reasonable exemption clauses in its policy as it thinks proper or necessary, and liability cannot be fixed upon it for injuries due to risks or causes which have been excepted unless it has waived or is estopped to set up such exception."

We are of the opinion, after giving this case very careful consideration, that the plaintiffs are not entitled to recover, and a judgment should be entered in favor of the defendant.

### Order.

And now, September 26, 1930, this matter came on to be heard upon agreement of the parties to submit the case to the court, and testimony was taken and arguments presented; whereupon, after due consideration, a verdict is rendered in favor of the defendant, and it is directed that judgment be entered for the defendant.

From W. G. Barker, Mercer, Pa.